IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Ron Tearia Nicholas, #231677, ) | |
| ) | |
| ) | Civil Action No. 8:05-3472-RBH-BHH |
| Plaintiff, ) | |
| ) | |
| ) | **ORDER AND REPORT OF** |
| **)** | **MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Jon E. Ozmint, Director of SCDC; ) | |
| S. Parker, Sergeant at Kirkland ) | |
| Correctional Institution; and Wilbert ) | |
| McGraw, Lieutenant at Kirkland ) | |
| Correctional Institution; and FNU Thomas, ) | |
| KCI Food Service Supervisor, ) | |
| ) | |
| ) | |
| Defendants. ) | |
| ) | |

The plaintiff, who is proceeding *pro se*, is currently housed in the Maximum Security Unit (MSU) at Kirkland Correctional Institution (KCI). In his Amended Complaint, the plaintiff generally alleges that his ability to exercise his religion as a Sunni Muslim has been impeded in several respects. He asserts claims under the First Amendment, the Fourteenth Amendment, and the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C. § 2000cc-1. This matter is before the Court on the defendants' motion for summary judgment, the plaintiff's various motions regarding a Temporary Restraining Order/preliminary injunction, the plaintiff's motion for Joinder, and the plaintiff's motion for partial summary judgment. By order, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment procedure and the possible consequences if he failed to adequately respond to the motion. On March 9, 2006, the plaintiff filed a response to the motion for summary judgment.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983 or filed by individuals proceeding *pro se*, and submit findings and recommendations to the District Court.

## **LAW AND ANAYLSIS**

### LIBERAL CONSTRUCTION OF *PRO SE* COMPLAINT

The petitioner brought this action *pro se*. This fact requires that his pleadings be accorded liberal construction. *Estelle v. Gamble*, 429 U.S.97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972); *Loe v. Armistead*, 582 F.2d 1291 (4th Cir.1978); *Gordon v. Leeke*, 574 F.2d 1147 (4th 1978). *Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. *Hughes v. Rowe*, 449 U.S. 5 (1980) (per curiam). Even under this less stringent standard, however, the *pro se* Complaint is still subject to summary dismissal. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir.1999). A court may not construct the petitioner's legal arguments for him. *Small v. Endicott*, 998 F.2d 411 (7th Cir.1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir.1985).

### SUMMARY JUDGMENT STANDARD OF REVIEW

The requirement of liberal construction does not mean that the court can assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. *See* Fed. R. Civ. P. 56(c). The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the

movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

## DISCUSSION

**I.   EXHAUSTION OF ADMINISTRATIVE REMEDIES**

The plaintiff has failed to exhaust his administrative remedies in regards to virtually all of his pending claims; he concedes as much in his response to summary judgment. 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id*. The Prison Litigation Reform Act's ("PLRA") exhaustion requirement is mandatory and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes," including "excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 524, 532 (2002). The exhaustion requirement applies even if the relief sought in the civil action is not available in the administrative proceedings. *See Booth v. Churner*, 532 U.S. 731, 741 (2001).

"To exhaust administrative remedies, a person must follow the rules governing filing and prosecution of a claim." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). Thus, the inmate must actually and strictly comply with the requirements of the administrative processes. *See Houze v. Segarra*, 217 F. Supp. 2d 394, 396 (S.D.N.Y. 2002) (and cases cited therein); *see also Booth*, 532 U.S. at 735 (noting that Booth failed

to undertake any intermediate or appellate steps in the administrative process). An inmate's failure to "properly take each step within the administrative process. . . bars, and does not just postpone, suit under § 1983." *Pozo*, 286 F.3d at 1024 (emphasis added); *see also White v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997) (dismissal is appropriate if the inmate fails to exhaust or only partially exhausts administrative remedies); *Massey v. Wheeler*, 221 F.3d 1030, 1034 (7th Cir. 2000) (same).

Critically, administrative remedies must be exhausted with respect to each claim against each and every Defendant or the entire Complaint must be dismissed under the "total exhaustion rule." *See Graves v. Norris*, 218 F.3d 884, 885 (8th Cir.2000); *Cummings v. Rubenstein*, 2004 WL 3312062 (S.D. W. Va. September 30, 2004); *Givens v. City and County of San Francisco*, 2002 WL 31478180, at *2 (N.D.Cal. Nov.5, 2002); *Saunders v. Goord*, 2002 WL 1751341, at *3 (S.D.N.Y. Jul.29, 2002)). In his response to the defendants' motion for summary judgment, the plaintiff concedes that he has failed to exhaust all of the claims "enumerated on page 4 of the defendants' motion." (Pl.'s Resp. Summ. J. at 1.) Accordingly, the plaintiff's entire Complaint should be dismissed under the doctrine of "total exhaustion."[1]

Moreover, the only claim which the plaintiff has properly exhausted is barred by *res judicata*. The plaintiff's first cause of action in his Amended Complaint includes a challenge to a publication ban as set forth in Paragraphs 13.1 and 13.2 of SCDC Policy No. OP-22.11 entitled "Maximum Security Unit." He complains that he is being denied access to religious publications, which have been sent to him. That claim, however, has already been the subject of a previous lawsuit before the Court and is *res judicata*.

The plaintiff challenged the publications ban on constitutional and statutory grounds in the case of *Nicholas v. Ozmint*, Civil Action No. 8:04-22471-RBH-BHH ("First Action").

---

[1] The Court has not identified any Fourth Circuit or District of South Carolina case considering the total exhaustion requirement outside of the habeas context.

4

In a final order filed March 31, 2006, United States District Judge R. Bryan Harwell adopted the Report and Recommendation of this Court and granted summary judgment to the defendants, including SCDC Director Jon Ozmint. In that order, Judge Harwell adopted the First Amendment analysis of this Court and concluded that the policy did not violate the First Amendment. He further addressed the plaintiff's statutory claim and concluded that the plaintiff did not prove that the policy at issue placed a substantial burden on the exercise of his religion. *See Nicholas v. Ozmint*, Civil Action No. 8:04-22471-RBH-BHH (March 31, 2006). The Court concludes that the claim pled by the plaintiff in his Amended Complaint is the same claim which the plaintiff has already litigated in the First Action. The plaintiff's current claim is, therefore, barred by *res judicata*.

"To establish a res judicata defense, a party must establish: (1) a final judgment on the merits in a prior suit, (2) an identity of the cause of action in both the earlier and the later suit, and (3) an identity of parties or their privies in the two suits." *Andrews v. Daw*, 201 F.3d 521, 524 (4th Cir. 2000). In regards to the first element, a final judgment was rendered in the First Action dismissing the plaintiff's claims related to receipt of religious texts and publications. *See Nicholas v. Ozmint*, Civil Action No. 8:04-22471-RBH-BHH (March 31, 2006).

The second element of the defendants' *res judicata* defense is satisfied insofar as the plaintiff's religious publication claim, at issue in this case, is identical to the claim previously resolved in the plaintiff's First Action. In his First Action, the plaintiff alleged that the SCDC policy prohibiting the receipt by mail of subscription magazines, newspapers, and books violated the First Amendment. (*Nicholas v. Ozmint*, Civil Action No. 8:04-22471-RBH-BHH, Amend. Compl. at 5-6; *Nicholas v. Ozmint*, Civil Action No. 8:04-22471-RBH-BHH Feb. 8, 2006) at 6.) In this present action, the plaintiff continues to complain that the "defendants enforce a policy against Muslims in the MSU that denies

them the right to receive religious texts about their faith in their incoming correspondence." (Amend. Compl. at 3.)

Finally, as to the identity of the parties, the plaintiff and Jon Ozmint, the Director of the South Carolina Department of Corrections, were party to both actions and the other defendants, in their official capacities, are "so identified in interest with [parties] to [the] former litigation that [they] represent precisely the same legal right in respect to the subject matter involved." *Jones v. SEC*, 115 F.3d 1173, 1180 (4th Cir. 1997).

Accordingly, the doctrine of *res judicata* bars consideration of the plaintiff's first cause of action.

## II.     GROOMING POLICY CLAIM

The remainder of the motions pending before the Court concern a claim originally pled in the plaintiff's initial Complaint but absent from his Amended Complaint. The plaintiff contends that the SCDC's Grooming Policy, which requires inmates to keep their hair short and their faces shaven, substantially burdens his free exercise of religion under the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C. § 2000cc-1. The plaintiff pled this claim in his initial Complaint and subsequently filed motions for a Temporary Restraining Order ("TRO")/preliminary injunction to enjoin the application of the policy. The plaintiff has also filed a motion for partial summary judgment on this claim.

The defendants have responded to the motions for a TRO/preliminary injunction, and in their motion for summary judgment, that the plaintiff has abandoned this claim because it was not re-pled in the plaintiff's Amended Complaint. The Court would not be inclined to construe the plaintiff's Amended Complaint so harshly under almost any circumstances, but the plaintiff has since attempted to amend his Amended Complaint by way of a motion for joinder of claims. The Court deems the Grooming Policy claim, as it is pled in the initial Complaint, a part of the plaintiff's Amended Complaint.

Nevertheless, the plaintiff's TRO/preliminary injunction motions should be denied because the plaintiff cannot demonstrate a likelihood of success on the merits and the Court does not find that the balance of harm between the plaintiff and the defendants "tips decidedly" in favor of the plaintiff.[2]  *See Blackwelder Furniture Co. v. Seilig Mfg. Co.*, 550 F.2d 189, 195 (4th Cir. 1977); *Rum Creek Coal Sales, Inc. v. Caperton*, 926 F.2d 353, 359 (4th Cir. 1991). The Fourth Circuit has already upheld the constitutionality of the SCDC Grooming Policy.  *See Hines v. South Carolina Department of Corrections*, 148 F.3d 353 (4th Cir. 1998).  In *Hines*, the Circuit recognized that "the Grooming Policy was implemented to help eliminate contraband, reduce gang activity, identify inmates, and maintain order in South Carolina's prisons." *Id*. at 358.  Relying on *Employment Division v. Smith*, 494 U.S. 872 (1990), the Court further held that "although the Grooming Policy may have an incidental effect of preventing the Inmates from wearing their hair and beards as their religion prescribes, under *Smith*, the Grooming Policy is a neutral and generally applicable regulation and, therefore, does not violate the Free Exercise Clause." *Hines*, 148 F.3d at 358.  The Court concluded that the Grooming Policy serves legitimate and even compelling penological interests.  The Court considered the policy "an eminently rational means of achieving the compelling governmental and penological interests of maintaining order, discipline and safety in prisons." *Id*. at 2.

When *Hines* was decided, however, the RLUIPA had not yet been enacted.  The Fourth Circuit, therefore, did not address the impact of RLUIPA on the enforceability of the SCDC Grooming Policy.  Nonetheless, the Court concludes that it is unlikely that the plaintiff could demonstrate that the Grooming Policy violates the RLUIPA.

Section 2000cc-1(a) of the RLUIPA provides as follows:

---

[2] The only harm that the plaintiff alleges is the consequences of an involuntary haircut, which he complains would include the use of harmful chemical munitions. Such speculative harm, however, is not a consequence of the grooming policy itself. It is simply a consequence, if any at all, of the plaintiff's own insubordination. Rather, short hair is the only consequence reasonably attributable to the policy and the plaintiff is silent as to the irreparability of the harm that follows from that condition – as none likely exists.

7

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person--
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a).

It is not likely that the plaintiff could establish that the Grooming Policy imposes a substantial burden on his free exercise of religion. First, the Fourth Circuit has already characterized the Grooming Policy as causing only the "*incidental effect* of preventing the Inmates from wearing their hair and beards as their religion prescribes . . . ." *Hines*, 148 F.3d at 358 (emphasis added). Second, other courts have concluded that similar policies do not impose a substantial burden under the RLUIPA. *See, e.g., Gooden v. Crain*, 405 F. Supp.2d 714 (E.D. Tex. 2005) ("[T]he Plaintiff is clearly permitted to practice the fundamental aspects of his religious beliefs and the grooming policy does not impose a substantial burden on the practice of his religious beliefs.")

On the other hand, even if the Grooming Policy placed a substantial burden on the plaintiff's practice of his religious beliefs, the policy furthers the compelling governmental interest of security, as determined by the Fourth Circuit in *Hines*, and is likely the least restrictive means of doing so, in regards to the concealment of weapons or contraband in prisoner's hair. *See Hines*, 148 F.3d at 358.

Accordingly, the plaintiff cannot demonstrate a likelihood of success on the merits and is not entitled to either a TRO or injunction. The defendants, however, have not moved for summary judgment on the Grooming Policy claim other than to argue it has been

8

abandoned; an argument rejected by the Court. The Court, therefore, will not perform an ultimate consideration of that claim on its merits.[3]

The plaintiff, however, has moved for summary judgment of the Grooming Policy claim on the basis of collateral estoppel. Specifically, the plaintiff contends that the SCDC represented to the Fourth Circuit in the *Hines* case that it permitted long hair and beards in administrative segregation – like the MSU where the plaintiff is currently held in which security is greater – as an accommodation to claimed religious beliefs. (*See* Pl.'s Mot. Partial Summ. J. Ex. A at 3.) The plaintiff argues that this concession by the SCDC in *Hines* was necessary to the Fourth Circuit's determination as to the constitutionality of the Policy under the analysis prescribed in *Turner v. Safley*, 482 U.S. 78, 89 (1987). It clearly was not. The Court does not read the decision in *Hines* to turn either expressly or implicitly on this purported concession and the plaintiff misapprehends the requirements of *Turner v. Safley*. The SCDC, therefore, is not collaterally estopped in regards to the plaintiff's Grooming Policy claim.

## **CONCLUSION**

Wherefore, it is is RECOMMENDED that, under the doctrine of "total exhaustion," the defendants' Motion for Summary Judgment be GRANTED and all of the plaintiff's claims, exclusive of his claim related to the receipt of religious publications, should be dismissed *without prejudice*. It is RECOMMENDED that the plaintiff's claim related to the receipt of religious publications, however, be dismissed *with prejudice.* If the District Court rejects the requirement of "total exhaustion," it is RECOMMENDED the defendants' motion for summary judgment as to the plaintiff's Grooming Policy claim be DENIED. Finally, it is RECOMMENDED that the plaintiff's motions related to his request for a Temporary

---

[3] If the District Court agrees that the doctrine of "total exhaustion" is applicable, then the entire Complaint, including the plaintiff's claim related to the Grooming Policy should be dismissed without prejudice, except for the claim related to the receipt of religious publications which is *res judicata*. It does not appear that the parties have briefed for the Court the status of any administrative proceedings related to the Grooming Policy.

Restraining Order or preliminary injunction and his motion for partial summary judgment should be DENIED. It is ORDERED that the plaintiff's motion for joinder is GRANTED. The plaintiff's motion to compel will be held in abeyance pending the District Court's disposition of the defendant's motion for summary judgment. Should the District Judge adopt this Court's recommendation as to dismissal of the entire case, the motion will be rendered moot.

It is so ORDERED and RECOMMENDED.

s/Bruce H. Hendricks
United States Magistrate Judge

July 25, 2006
Greenville, South Carolina