IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Ron Tearia Nicholas, #231677, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 8:05-3472-RBH-BHH |
| | ) |
| | ) **REPORT AND RECOMMENDATION** |
| | ) **OF MAGISTRATE JUDGE** |
| vs. | ) |
| | ) |
| Jon E. Ozmint, Director of SCDC; | ) |
| S. Parker, Sergeant at Kirkland | ) |
| Correctional Institution; and Wilbert | ) |
| McGraw, Lieutenant at Kirkland | ) |
| Correctional Institution; and FNU Thomas, | ) |
| KCI Food Service Supervisor, | ) |
| | ) |
| Defendants. | ) |

The plaintiff, who is proceeding *pro se*, is currently housed in the Maximum Security Unit (MSU) at Kirkland Correctional Institution (KCI). In his Amended Complaint, the plaintiff generally alleges that his ability to exercise his religion as a Sunni Muslim has been impeded as a result of application of certain grooming policies of the South Carolina Department of Corrections ("SCDC"). On a previous motion for summary judgment of the defendants, all claims in this case were dismissed with prejudice, except for the plaintiff's claim pursuant to Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C. § 2000cc-1, concerning grooming practices.

By order of the district court, this case was recommitted to the undersigned and the defendants were granted leave to file additional dispositive motions concerning the remaining grooming claim. This matter is now before the Court on the defendants' second motion for summary judgment regarding that claim [Doc. 55]. By order, pursuant to

*Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment procedure and the possible consequences if he failed to adequately respond to the motion. On November 15, 2006, the plaintiff filed a response to the motion for summary judgment.

Consideration of the present motion was delayed during the pendency of the plaintiff's interlocutory appeal concerning his other claims. That appeal was denied and the motion for summary judgment is ripe for consideration.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983 or filed by individuals proceeding *pro se*, and submit findings and recommendations to the District Court.

## **LAW AND ANAYLSIS**

### LIBERAL CONSTRUCTION OF *PRO SE* COMPLAINT

The petitioner brought this action *pro se*. This fact requires that his pleadings be accorded liberal construction. *Estelle v. Gamble*, 429 U.S.97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972); *Loe v. Armistead*, 582 F.2d 1291 (4th Cir.1978); *Gordon v. Leeke*, 574 F.2d 1147 (4th 1978). *Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. *Hughes v. Rowe*, 449 U.S. 5 (1980) (per curiam). Even under this less stringent standard, however, the *pro se* Complaint is still subject to summary dismissal. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir.1999). A court may not construct the petitioner's legal arguments for him. *Small v. Endicott*, 998 F.2d 411 (7th Cir.1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir.1985).

**SUMMARY JUDGMENT STANDARD OF REVIEW**

The requirement of liberal construction does not mean that the court can assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. *See* Fed. R. Civ. P. 56(c). The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

## **DISCUSSION**

The plaintiff contends that the SCDC's Grooming Policy, SCDC Policy No. OP-22.13, which requires all inmates, regardless of security level, to keep their hair short and their faces shaven (*see* Ward Aff. Ex. A),[1] substantially burdens his free exercise of religion under the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C. § 2000cc-1. Prior to the passage of the RLUIPA, a previous version of this policy was upheld by the Fourth Circuit in *Hines v. South Carolina Department of Corrections*, 148

---

[1] The SCDC's Grooming Policy, OP-22.13, which was enacted on March 20, 2004, provides, "All male inmates' hair must be neatly cut (not to exceed one inch in length) and must remain above the shirt collar and above the ear (not touching the ear)," and "no inmate will be permitted to wear a beard . . . ." (Ward Aff. Ex. B.) The policy further provides, "Inmates may be given forced haircuts or shaves if they refuse to comply with the haircut and shave policy" (Ward Aff. Ex. A).

F.3d 353 (4th Cir. 1998). Obviously, the Fourth Circuit did not address the impact of RLUIPA on the enforceability of the grooming policy at that time.

Since the *Hines* decision, the grooming policy has been amended in two respects, material to this case, both of which the plaintiff emphasizes. First, it now authorizes forced haircuts and shaves if an inmate refuses to comply with the policy [2] and, second, it has been made applicable to all inmates including those, like the plaintiff, who are housed in higher levels of custody, including the Maximum Security Units ("MSU") and the Special Management Units ("SMU"). (Ward Aff. ¶ 2.)

Numerous decisions of the Fourth Circuit and this district have dealt with the grooming policy, through the years, and found it materially unobjectionable in every instance. *See, e.g.*, *Hines v. South Carolina Department of Corrections*, 148 F.3d 353 (4th Cir. 1998); *Roberts v. Ozmint*, 2006 WL 2303183, at *2 (D.S.C. August 8, 2006)*; Strong v. Ozmint*, C.A. No. 2:03-2256-24AJ, at 30 (D.S.C. Sept. 28, 2005), *affirmed by* 2004 WL 1790208, at *1 (4th Cir. 2004) (unpublished)*; Caprood v. Moore*, C.A. No. 0:98-0603-22BD (D.S.C. 1999) (denying motion for preliminary injunction to stop prison officials from using force to cut the inmate's head or face hair); *Smith v. Casey*, C.A. No. 0:97-2034-23BD (D.S.C.1998) (denying motion for preliminary injunction to stop prison officials from enforcing SCDC's Grooming Policy).

The Fourth Circuit, however, has not taken the occasion to affirm the grooming policy, as amended, either under the RLUIPA or otherwise. Notwithstanding, this district has, in fact, affirmed the amendment of the policy to require forced haircuts and shavings, typically on the basis of *Hines*. *See Roberts*, 2006 WL 2303183, at *4 (string citing district

---

[2] The amendment to require forced haircuts and shavings appears to have been made effective as of May 1, 2004. (*See* Ward Aff. ¶ 2.) *Hines* clearly indicates that at the time that case was decided, forced haircuts and shavings were not permissible under the grooming policy. See Hines, 148 F.3d at 356 ("No prisoners are forcibly shaved or shorn.") Instead, inmates who refused to comply with the grooming policy were reclassified to a more restrictive security level. *Id*.

4

cases dealing with forced haircuts, including *Strong*). In *Strong,* an RLUIPA claim was pled,[3] while in *Roberts*, it was not.

Most recently, in March of this year, the Honorable P. Michael Duffy adopted the thorough report and recommendation of Magistrate Judge Bristow Marchant, concluding that application of the forced haircut and shaving amendment to all inmates, regardless of security level, met the strictures of the RLUIPA. *Smith v. Ozmint*, 2007 WL 858749, at *14-15 (D.S.C. March 20, 2007). Therefore, it is already the position of this district that the precise objection of the plaintiff to the grooming policy, in this case, is without merit. The Court has duplicated the required analysis below and sees no bases to modify that position.

**I.      The RLUIPA Claim**

Section 2000cc-1(a) of the RLUIPA provides as follows:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person--
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a); *see Cutter v. Wilkinson*, 544 U.S. 709, 714 (2005).

As the parties concede, the burden is on the plaintiff to establish that the grooming policy is a substantial burden to the exercise of his religion. The defendant first argues that *Hines* holds, as a matter of law, that the grooming policy, at issue, is only an "incidental" burden on the plaintiff's religion. Specifically, the defendant highlights the determination of the Fourth Circuit that "although the Grooming Policy *may have an incidental effect* of preventing the Inmates from wearing their hair and beards as their religion prescribes,

---

[3] Although the amendment to the policy was not effective until 2004, *Strong* appears to have involved an alleged forced shaving. See *Strong*, C.A. No. 2:03-2256-24AJ, at 30 (D.S.C. Sept. 28, 2005) ("Plaintiff claims that he is "physically forced to cut his hair and beard . . . .").

5

under *Smith*, the Grooming Policy is a neutral and generally applicable regulation and, therefore, does not violate the Free Exercise Clause." *Hines*, 148 F.3d at 358 (emphasis added).

Upon closer examination of *Hines*, the Court concludes that the Fourth Circuit, by employing the word "incidental," did not mean to imply insignificance, as the defendant suggests. Rather, the Fourth Circuit meant simply that the burden on the plaintiff's religion was secondary, or collateral, to the primary purpose of the generally applicable policy – to enhance security and maintain order. The word does not convey some order of magnitude. Thus, the Court will not interpret *Hines* as holding that the grooming policy cannot pose a substantial burden on the plaintiff's exercise of his religion, as a matter of law.

The defendant also argues that the plaintiff has simply failed to meet his burden to demonstrate that the imposition on his religious practice, posed by the policy, is substantial. The only evidence submitted as to the burden posed by the grooming policy are the responses of Mutahir Sabree, a Muslim Chaplain at Kirkland Correctional Institution, given in response to requests to admit, served in a separate action, *Nichols v. Sabree*, 8:06-319-RBH-BHH. The request to admit queries Sabree as to whether "Islam prohibit [sic] a Muslim from shaving his beard?" In response, Sabree states, "Yes, there is a comment from Muhammad in the Hadith to let the beard grow." Assuming that such an admission would even be admissible at trial in this case, the Court does not see how it creates any genuine issue of fact as to the burden imposed upon the plaintiff.

Sabree's answer says nothing about the importance of the practice. It is not described as a commandment, sacrament, mandate, or requirement. In fact, Sabree states that the practice, to let the beard grow, is simply a "comment" from the Prophet. The plaintiff has produced no evidence as to the consequences for any failure to follow the practice. Although he alleges that he will "be severely punished in hell fire for violating the laws of Al-Islam" (Pl. Opp. Summ. J. at 2), he has produced no authority for that allegation

6

either from any holy book of his faith or from any expert, religious or scholarly.  The plaintiff has also not produced any evidence of lesser consequences – loss of communion with like believers, effect on other religious practices or membership in religious community, etc. The plaintiff has simply failed to put forward evidence regarding the centrality of the practice.

Moreover, the plaintiff has submitted no evidence or literature concerning the specific tenants of his particular faith.  The Court takes judicial notice that there exists numerous sects and variations on the faith practice known generally as Islam.  The plaintiff claims to be a practitioner of Al-Islam. (Pl. Resp. Summ. J. at 2.)  The teachings of Al-Islam are not familiar to the Court and have not been evidenced by the plaintiff.  He has created no genuine issue of fact as to the centrality of the practice to his specific set of beliefs.

It should be noted that other courts have concluded that similar policies do not impose a substantial burden under the RLUIPA.  *See, e.g., Gooden v. Crain*, 405 F. Supp.2d 714 (E.D. Tex. 2005) ("[T]he Plaintiff is clearly permitted to practice the fundamental aspects of his religious beliefs and the grooming policy does not impose a substantial burden on the practice of his religious beliefs.") By way of contrast, the Ninth Circuit, in *Warsoldier v. Woodford*, 418 F.3d 989 (9th Cir. 2005), did conclude that the grooming policy posed a substantial burden, but on the basis that the plaintiff had submitted specific evidence of such burden.  *Id*. at 996.  The plaintiff, here, has not.

Finally, the plaintiff contends that an Order of the Honorable Cameron Currie has already concluded that the grooming policy constitutes a substantial burden.  (Pl. Ex. B.) Of course, the very sentence cited by the plaintiff, to that effect, demonstrates that she reached no such conclusion.  To the contrary, in determining whether the plaintiff would suffer any irreparable harm while performing a preliminary injunction analysis, she stated, "This court assumes *without deciding* that, even absent the application of force, the grooming policy infringes on Plaintiff's sincerely held religious beliefs, and that plaintiff

7

suffers irreparable harm thereby." (Pl. Ex. B at 7 (emphasis added).) The Order expressly states that the issue was only assumed and not decided.[4]

For all these reasons, the Court rejects that the plaintiff has met his burden to show that the grooming policy imposes a substantial burden upon the practice of his religion. But even if genuine issues of fact exist as to whether the grooming policy creates a substantial burden, the defendants have met their burden to demonstrate that the policy is (1) in furtherance of a compelling governmental interest and (2) the least restrictive means of furthering that compelling governmental interest.

### A.    Compelling Interest

The defendants have met their burden to show that the grooming policy furthers a compelling governmental interest. Concerning this same policy, the Fourth Circuit concluded that it "was enacted to suppress contraband, limit gang activity, maintain discipline and security, and prevent inmates from quickly changing their appearance." *Hines*, 148 F.3d at 358. The defendants, in addition to concerns over limited space, hygiene, and sanitation problems, again advance these same reasons as compelling, in the present case. (See generally Ward Aff.) The Fourth Circuit has already decided that such concerns are " compelling governmental and penological interests of maintaining order, discipline and safety in prisons." *Id*. at 358. Neither the amendments to the policy nor the application of the RLUIPA, alters that conclusion. They remain compelling and the defendants have met their burden in that regard.

### B.    Least Restrictive Means

What *Hines* is unable to answer, on its face, is whether the forcible haircuts and shavings of SMU or MSU inmates is the least restrictive means of accomplishing the

---

[4] The Court need not discuss whether substantial harm and irreparable harm are equivalent. Judge Currie's Order and *Hines*, simply do not stand for the proposition, for which the plaintiff employs them. But, it should be noted, irreparability is not a measure of the magnitude of harm but simply of whether the harm is capable of remediation through a monetary award.

compelling interest identified above. As stated, however, this district has already concluded that it is. *See Smith*, 2007 WL 858749, at *14-15.

Numerous other courts have also found that grooming regulations, including the forced cutting of hair, meet the "least restrictive means" criteria (the second prong of the RLUIPA two-prong test), even under a "strict scrutiny" analysis. *See Hoevenaar v. Lazaroff*, 422 F.3d 366, 371-72 (6th Cir.2005); *Brunskill v. Boyd*, 141 Fed. Appx. 771, 775-76 (11th Cir. 2005)*; Daker v. Washington*, 469 F. Supp. 2d 1231, 1239 (N.D. Ga. Jan. 16, 2007) (finding shaving policy was least restrictive means and did not violate RLUIPA)*; Clark v. Briley*, No. 03-3852, 2005 WL 2369330 at *2-4 (N.D.Ill. Sept. 26, 2005) (finding that forcing inmate to submit to a haircut was the least restrictive means of meeting the safety and security concerns at the prison).

The defendants have submitted the affidavit of Robert Ward, evidencing reasons for why it was necessary to extend forced application of the grooming policy to inmates housed in higher custody levels including SMU. Ward has stated that earlier attempts by SCDC to allow inmates in certain high custody units to grow their hair proved "difficult and unworkable." (Ward Aff. ¶ 3.) Experience showed that long hair provided the inmates -- even those in higher custody housing -- with places to hide contraband. (Ward Aff. ¶ 8.) Ward describes a situation in January 2004, in the SMU at Broad River Correctional Institution, where keys were taken from an officer and used to release inmates. *Id*. The keys remained missing even after the disturbance was quelled, and it was believed that the missing keys were concealed in long hair. *Id*. It was only after the forced haircuts of all inmates were ordered that the keys were located. (Ward Aff. ¶ 8.)

In addition, Ward has indicated that concerns regarding the possibility of escape, even from more secure units such as the MSU and the SMU, are real, and long hair facilitates such escapes. Ward attests that there have been escapes and attempted escapes in recent years from such high custody units. (Ward Aff. ¶ 10.) The inmates also

9

have greater opportunities for escapes when being transported outside of the institution, such as to court or doctor's appointments. *Id*. Ward emphasized the ability for an inmate with long hair and beards to dramatically change their appearance upon escape and, thereby, allude capture. *Id*.

Ward also contends that the long hair grown by inmates creates personal hygiene and sanitation problems. (Ward Aff. ¶ 7.) This is particularly problematic in the highest custody units such as MSU and SMU, where there is more frequent and closer contact between the inmates and the correctional staff than what is normally experienced between inmates and staff in the general population. *Id*. The officers in the MSU and SMU are required to do shakedowns/searches of cells and strip searches of the inmates when they are escorted to and from their cells. *Id*. The defendants argue that without the grooming policy, the officers would be required to search long hair and beards, which would only heighten the hygiene problems for the officers. There are also legitimate concerns that the officers' searches could not be as thorough because of the unsanitary conditions. The Court, in *Hines,* recognized this fact: "[S]earches of inmates with long hair are less effective and more time consuming than searches of inmates with short hair." *Hines*, 148 F.3d at 358.

Finally, Ward indicates that the modified grooming policy has served the important purpose of making additional cell space available in SMU units to house inmates who legitimately pose security threats rather than inmates who were housed in such units simply because they were opposed to the grooming standards and wanted to grow their hair. (Ward Aff. ¶ 5.) As stated, the policy previously gave inmates a choice to either conform to the grooming policy or be transferred to a higher custody level. Ward's affidavit only confirms the obvious consequence that offering such a choice would likely place inmates in high custody units at the expense of space needed to house those who pose greater risk.

The Court is required to show deference to such judgments and perspectives of prison administrators. *See Cutter v. Wilkinson,* 544 U.S. 709, 723 (2005); *In re Long Term Administrative Segregation of Inmates Designated as Five Percenters*, 174 F.3d 464, 469 (4th Cir. 1999).

The plaintiff generally responds that the defendants have never tried any other less restrictive means and that the elevated custody units themselves are a reasonable alternative such that short hair is redundant or unnecessary. The Court agrees with the plaintiff that the defendants cannot meet their burden to prove least restrictive means unless they demonstrate that they have actually considered and rejected the efficacy of less restrictive measures before adopting the challenged practice. See *United States v. Playboy Entm't Group, Inc.,* 529 U.S. 803, 824 (2000) (finding, in context of First Amendment challenge to speech restrictions, that "[a] court should not assume a plausible, less restrictive alternative would be ineffective"); *City of Richmond v. J.A. Croson*, 488 U.S. 469, 507, 109 S.Ct. 706, 102 L.Ed.2d 854 (1989) (holding that city's minority set-aside program was not narrowly tailored in part because city had not considered whether race neutral measures would have achieved government's interest).

In this case, however, not only have the defendants *considered* the less restrictive measure proposed by the plaintiff – non application of the policy to higher custody units – they have implemented such a measure. But, as described above, implementation of that less restrictive alternative proved ineffective to accomplish the compelling interests. (See generally Ward Aff.) The plaintiff contends that other measures could be pursued and that the defendants have not really put forward specific evidence of incidences related to hygiene and security.[5] To the contrary, the Court finds that the defendants' evidence is

---

[5] The plaintiff also sites to discovery responses of the defendant indicating that there is no evidence that the plaintiff's own hair has caused problems related to contraband, hygiene, etc. This point is of no moment. The defendants do not need an independent and compelling interest for each individual inmate in order to make application of the grooming policy under the RLUIPA.

substantially specific and composed of precise occurrences, including dates and facts, which show the failing of the alternatives proposed by the plaintiff. (See Ward Aff. ¶¶ 5, 8, 9.) As stated, the Court will give great deference to the individuals endowed both with the responsibility and the expertise to make these difficult decisions over matters of prison security.

Other courts have concluded that short hair and beards in maximum security units are the least restrictive means to serve the interests of security and order. *See Harris v. Chapman*, 97 F.3d 499, 503-04 (11th Cir.1996) (finding state's "compelling interest in security and order within their prisons" especially applies "in 'close custody' facilities like MCI which contain extremely violent offenders" and stating "we are unable to suggest any lesser means than a hair length rule for satisfying these interests"); *Hamilton v. Schriro*, 74 F.3d 1545, 1555 (8th Cir.1996) ("It is more than merely 'eminently reasonable' for a maximum security prison to prohibit inmates from having long hair in which they could conceal contraband and weapons. It is compelling. . . .  Moreover, there is no viable less restrictive means of addressing these concerns.").  It is commendable that the SCDC even attempted to demand less, previously.

Accordingly, the defendants have met their burden to demonstrate that the grooming policy serves both a compelling interest and is the least restrictive means to do so.

## CONCLUSION

Wherefore, it is is RECOMMENDED that, the defendants' motion for summary judgment [Doc. 55] should be GRANTED.

It is so RECOMMENDED.

                                                s/Bruce H. Hendricks
                                                United States Magistrate Judge

October 1, 2007
Greenville, South Carolina

**The plaintiff's attention is directed to the important notice on the next page**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail.  Fed. R. Civ. P. 6(a) & (e).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> P.O. Box 10768
> Greenville, South Carolina 29603

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).