IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Habeeb Abdul Malik, )<br>a/k/a Ron Tearia Nichols, #231677, )<br>　　　　)<br>　　Plaintiff, )<br>　　　　)<br>v. )<br>　　　　)<br>Jon E. Ozmint, Director of SCDC; )<br>S. Parker, Sergeant at Kirkland )<br>Correctional Institution; and Wilbert )<br>McGraw, Lieutenant at Kirkland )<br>Correctional Institution; )<br>　　　　)<br>　　Defendants. )<br>_____) | Civil Action No.: 8:05-cv-03472-RBH<br><br><br><br><br>**ORDER** |

This matter is before the Court upon Plaintiff's objections to the Report and Recommendation ("R&R") of United States Magistrate Judge Bruce Howe Hendricks.[1] In the R&R, the Magistrate Judge recommends that the Court grant the Defendants' Motion for Summary Judgment [Docket #55]. The Magistrate Judge further recommends that the Court deny the Plaintiff's motions for a temporary restraining order [Docket #85] and a preliminary injunction [Docket #123]. This matter is ripe for review.

**Procedural History**

The Plaintiff is currently housed in the Maximum Security Unit ("MSU") at Kirkland Correctional Institution. On January 3, 2006, the Plaintiff filed a *pro se* Amended Complaint appearing to allege that his ability to exercise his religion as a Sunni Muslim has been impeded as a result of the South Carolina Department of Corrections' ("SCDC") Grooming Policy. On

---

[1] In accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02 (D.S.C.), this matter was referred to United States Magistrate Judge Bruce Howe Hendricks for pretrial handling.

a previous motion for summary judgment by the Defendants, all claims in this case were dismissed with prejudice, except for the Plaintiff's claim concerning the Grooming Policy pursuant to the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000-cc-1. Subsequently, the Court recommitted the case to the Magistrate Judge and the Defendants were granted leave to file additional dispositive motions concerning the Plaintiff's remaining claim.

On October 10, 2006, the Defendants' filed a second Motion for Summary Judgment specific to the remaining claim. On November 15, 2006, the Plaintiff filed a timely response. On October 1, 2007, the Magistrate Judge issued her R&R recommending the Court grant the Defendants' Motion for Summary Judgment. Subsequently, this Court stayed the matter in anticipation of the Fourth Circuit's ruling in a separate, but related case, *Smith v. Ozmint,* 578 F.3d 246 (4th Cir. 2009) (concerning the Grooming Policy at issue). The *Smith* case was recently remanded for further proceedings. As a result, this Court lifted the stay in this matter, and the parties were given additional opportunity to supplement their briefing in light of the Fourth Circuit's decision in *Smith.*

As of February 1, 2010, the case was finally and fully ripe for resolution. On February 16, 2010, the Magistrate Judge issued her R&R. On March 2, 2010, the Plaintiff filed timely objections to the R&R.

It is important to note that on remand, in *Smith V. Ozmint,* No. 9:04-1819-PMD-BM, the Honorable Bristow Marchant, Magistrate Judge for the District of South Carolina, again recommended that the district court conclude that the Grooming Policy serves compelling governmental interests and is the least restrictive means of furthering those interests. On March

18, 2010, Judge Patrick Michael Duffy entered an Order adopting the Magistrate Judge's R&R and granting summary judgment in favor of the defendants and the Grooming Policy.

## Standard of Review

The Magistrate Judge makes only a recommendation to the Court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The Court is charged with making a *de novo* determination of those portions of the R&R to which specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The Court is obligated to conduct a *de novo* review of every portion of the Magistrate Judge's report to which objections have been filed. *Id.* However, the Court need not conduct a *de novo* review when a party makes only general and conclusory objections that do not direct the Court to a specific error in the Magistrate Judge's proposed findings and recommendations. *Orpiano v. Johnson,* 687 F.2d 44, 47-48 (4th Cir. 1982). In the absence of a timely filed, specific objection, the Magistrate Judge's conclusions are reviewed only for clear error. *See Diamond v. Colonial Life & Accident Ins. Co.,* 416 F.3d 310, 315 (4th Cir. 2005).

## Discussion

Under 42 U.S.C. § 2000cc-1(a),

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person--

**(1)** is in furtherance of a compelling governmental interest; and

**(2)** is the least restrictive means of furthering that compelling governmental interest.

3

Once a plaintiff produces prima facie evidence that a policy imposes a substantial burden on his religious exercise, the government bears the burden of persuasion to prove that the burden in question is the least restrictive means of furthering a compelling governmental interest. *Id.* "As to those elements on which it bears the burden of proof, a government is only entitled to summary judgment if the proffered evidence is such that a rational fact-finder could only find for the government." *Smith,* 578 F.3d at 250.

In his objections, the Plaintiff "object[s] to the Magistrate's position that the Defendants have met the least restrictive means requirement under RLUIPA 42 U.S.C. 2000 in showing that forced-grooming is the only way to accomplish their penological interests." *Plaintiff's Objections,* p.1. It is also questionable whether the Plaintiff objects to the finding that the Grooming Policy furthers a compelling governmental interest.[2] Thus, the Court will address each prong in turn.[3]

*Compelling Interest*

To meet the burden of persuasion, the Defendants' "first job" is "to take the unremarkable step of providing an explanation for the policy's restrictions that takes into account any institutional need to maintain good order, security, and discipline or to control costs." *Smith,* 578 F.3d at 252 (quoting *Lovelace v. Lee,* 472 F.3d 174, 190 (4th Cir. 2006)). It is important to note, however, security concerns deserve "particular sensitivity." *Cutter v. Wilkinson,* 544 U.S. 709, 722 (2005). While the RLUIPA adopts a "compelling governmental interest" standard, "[c]ontext matters" in the application of that standard. *Id.* at 722-23 (citations omitted). "Lawmakers

---

[2] *See Plaintiff's Objections,* pp.6-7.

[3] While there may be a genuine issue of material fact as to whether the Grooming Policy imposes a substantial burden on the Plaintiff's exercise of religion, the Court will assume that the Plaintiff has met his initial burden for purposes of its analysis.

4

supporting RLUIPA were mindful of the urgency of discipline, order, safety, and security in penal institutions." *Id.* at 723 (citation omitted). As such, "[t]hey anticipated that courts would apply the Act's standard with 'due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." *Id.* (quotations omitted).

According to the Fourth Circuit, "[i]t is clear that the Grooming Policy was enacted to suppress contraband, limit gang activity, maintain discipline and security, and prevent inmates from quickly changing their appearance. It cannot be [denied] that these are legitimate- indeed, *compelling-* governmental and penological interests." *Hines v. SCDC,* 148 F.3d 353, 358 (4th Cir. 1998) (emphasis added). While the Court was examining general population inmates in *Hines*, the same interests are equally- if not more compelling- for a close custody, higher security classification, unit such as the Maximum Security Unit ("MSU"). However, in *Smith,* the Fourth Circuit found that the district court erred in reaching the conclusion on summary judgment that the MSU Grooming Policy advances a compelling interest because the security concerns "were discussed in the context of SCDC's experience with SMU[4] inmates, not MSU inmates." *Smith,* 578 F.3d at 253 ("For example, Ward did not discuss whether (or to what extent) there was a risk

---

[4] SCDC maintains two specialized housing units, the Maximum Security Unit ("MSU") and the Special Management Unit ("SMU"), for prisoners requiring greater monitoring and supervision than the general prison population. MSU is a "supermax" facility and is a specialized housing unit for inmates who have demonstrated an unwillingness to conform to the rules and regulations of SMU.

5

of contraband in the MSU, whether MSU inmates are exposed to assault by other inmates, or whether (or to what extent) there is a risk of escape from MSU.").[5]

In the instant matter, the Defendants have established that the MSU Grooming Policy furthers the compelling interests, specifically safety and security concerns, at the MSU.[6] The affidavit of Robert E. Ward, Director of the Division of Operations, starts by emphasizing that the safety and security concerns that constituted a compelling interest in *Hines* are even more compelling for the MSU. *Ward Aff.* ¶ 8-9 (The MSU "is a specialized housing unit for inmates who have demonstrated an unwillingness to conform to the rules and regulations of a Special Management Unit [or] who have been charged with violent criminal behavior committed while in the general population"; MSU "houses the most violent, dangerous and disruptive inmates within SCDC.").[7]

---

[5] Specifically, the Fourth Circuit was puzzled that the primary support for the MSU Grooming Policy was an affidavit that dealt solely with SMU inmates: "The major failing of the Ward affidavit is that it was not written to address this case. Specifically, it was not written to establish that the MSU grooming policy- which allows the use of force to achieve compliance-is in furtherance of a compelling governmental interest . . . . Ward says nothing about the need to administer forced head shaving in the MSU. . . ." *Smith,* 578 F.3d at 253.

[6] The Defendants also emphasizes the following interests, which have been repeatedly affirmed as compelling: "maintaining the 'control' element of MSU's rehabilitative goals, to correct inmate behavior"; "mitigating tools of disguise upon escape"; and "preserving limited maximum security space." *See Hines,* 148 F.3d at 358.

[7] Common reasons for assignment to the MSU include "violent escapes or escape attempts with force, violent resistance to apprehension, aggravated assault on staff or inmates, murder and/or attempt to commit murder while incarcerated, violent participation in a riot or other institutional disorder, seizing and hold[ing] a hostage or in any manner unlawfully detaining a person against his or her will, circumstances that pose an extraordinary threat to the security and/or orderly operation of an institution and/or history of violent and assaultive behavior." *Ward Aff.* ¶ 8 (quoting SCDC Policy No. OP-22.11).

Further, the Defendants have offered the affidavit of Gary D. Lane, who served as Captain over the MSU at Kirkland Correctional Institution for approximately two years and had regular personal interaction with the inmates, including the Plaintiff. In his affidavit, Lane testified that long hair/beards poses many safety and security risks in the MSU, all related to the ability and propensity of inmates to hide weapons, contraband, devices of escape, and bodily fluids therein.[8] As such, long hair/beards threatens the general security and control of the MSU, poses an incidental safety risk to officers in the performance of their general security duties to search MSU inmates routinely, disincentivizes thorough searches, and aids the development and success of escape tools. In sum, as the Magistrate Judge discusses in detail in her R&R, the record clearly reflects that preservation of safety and security in the MSU is a compelling interest, which the Grooming Policy directly targets and furthers.[9]

*Least Restrictive Means*

Next, the Defendants must demonstrate that the Grooming Policy is the least restrictive means of furthering the compelling governmental interests established above.[10] It is important to note, however, that "[i]t would be a herculean burden to require prison administrators to refute

---

[8] Specifically, Lane testifies about prior incidents of MSU inmates creating "shanks," knives, and other weapons such as a "toothbrush with a razorblade placed on one end [or] a pencil with a razorblade attached to one end" that can be concealed in long hair or dreadlocks. *See Lane Aff.* ¶ 15-19.

[9] As Lane states, "it is a constant daily struggle for the MSU staff to locate and eliminate these items from the facility"; however, "elimination of long and/or matted hair styles has helped to eliminate an effective and common hiding place for such materials." *Id.* at 17-19

[10] Other courts have already found that grooming regulations, including the forced cutting of hair, meet the "least restrictive means" test, even under a "strict scrutiny" analysis. *See, e.g., Fegans v. Norris,* 537 F.3d 897, 905-06 (8th Cir. 2008); *Hoevenaar v. Lazaroff,* 422 F.3d 366, 371-72 (6th Cir. 2005); *Daker v. Washington,* 469 F. Supp. 2d 1231, 1239 (N.D. Ga. 2007) (finding shaving policy was least restrictive means and did not violate RLUIPA).

every conceivable option in order to satisfy the least restrictive means prong of [RLUIPA]." *Hamilton v. Schriro,* 74 F.3d 1545, 1556 (8th Cir. 1996) (applying RFRA); *accord Spratt v. R.I. Dep't of Corr.,* 482 F.3d 33, 41 n.11 (1st Cir. 2007) (suggesting that "to meet the least restrictive means test, prison administrators generally ought to explore at least some alternatives, and their rejection should generally be accompanied by some measure of explanation") (applying RLUIPA). As Justice Blackmun has recognized, "[a] judge would be unimaginative indeed if he could not come up with something a little less 'drastic' or a little less 'restrictive' in almost any situation, and thereby enable himself to vote to strike [regulation] down." *Ill. State Bd. of Elections v. Socialist Workers Party,* 440 U.S. 173, 188-89 (1979) (Blackmun, J., concurring) (criticizing the least restrictive means test as a "slippery slope" of uncertainty). As such, to require prison administrators to refute every conceivable option would render federal judges "the primary arbiters of what constitutes the best solution to every religious accommodation problem" in state penal institutions. *Lovelace,* 472 F.3d at 215 (Wilkinson, J., dissenting). Such a construction of the RLUIPA's least restrictive means test would be inconsistent with congressional intent. *See Cutter,* 544 U.S. at 722-23 (instructing courts to provide "due deference to the experience and expertise of prison and jail administrators" in construing RLUIPA); *see also Woodford v. Ngo,* 548 U.S. 81, 93 (2006) (Congress, which passed RLUIPA, also enacted the Prison Litigation Reform Act of 1995, precisely to eliminate such "unwarranted federal-court interference with the administration of prisons."). Thus, in the instant matter, the Defendants must "provide a substantive, relevant explanation as to why [forced haircuts] are the least restrictive means of enforcing the compelling interest [of preserving safety and security in the MSU]." *Smith,* 578 F.3d at 253.[11]

---

[11] As discussed in the procedural history, this district, specifically Judge Duffy, has already held the Grooming Policy at issue to be the least restrictive means of furthering the

8

In his objections, the Plaintiff claims that (1) the Defendants have not considered and rejected any alternative means and (2) a religious exemption would be a lesser restrictive approach to accomplish the same compelling ends, as evidenced by its use in other jurisdictions. First, the Plaintiff complains that the Defendants have not presented evidence that alternatives were ever attempted, specifically in the MSU, because MSU had grooming standards in effect since its opening in 1993. While it is true that MSU inmates, because they are the "most violent, dangerous and disruptive inmates within SCDC"[12] were subjected to forced haircuts prior to the change in department-wide policy in 2004, the Defendants have still explored alternatives.[13]

As Ward indicated in his affidavit, the Defendants previously allowed inmates in lower custody levels (such as general population) who wished to grow long hair/beards to be reclassified and housed in the SMU, which is a higher custody level. However, that attempt proved to be unworkable and failed to alleviate the compelling interests at issue. *See Ward Aff.* ¶ 39 ("That

---

compelling governmental interests present in the MSU. *See Smith v. Ozmint,* No. 9:04-01819-PMD [Docket #307] (Order adopting Magistrate Judge's R&R and granting Defendants' Motion for Summary Judgment).

[12] *Ward Aff.* ¶ 9.

[13] It should be noted that there have been several lawsuits filed by MSU inmates challenging the use of forced haircuts and shaves in MSU prior to 2004, when the department-wide policy was ultimately changed to allow for forced haircuts and shaves for all non-compliant inmates. The Fourth Circuit affirmed the practice of forced haircuts in those cases. In *Caprood v. Moore,* 188 F.3d 501 (4th Cir. 1999) (table), the Fourth Circuit affirmed Judge Currie's Order adopting the R&R of Magistrate Judge Marchant, who rejected an MSU inmate's claim that the use of forced haircuts in the enforcement of the SCDC Grooming Policy was unconstitutional. Later, in the case of *Strong v. Ozmint,* 106 Fed. Appx. 836 (4th Cir. 2004), an RLUIPA case, the Fourth Circuit affirmed Judge Seymour's Order adopting the R&R of Magistrate Judge Carr, who recommended the denial of a motion for temporary restraining order and/or preliminary injunction filed by an MSU inmate seeking to enjoin SCDC officials from enforcing the Grooming Policy as well as the use of forced haircuts to maintain compliance with the policy.

approach did not alleviate the security, hygiene, identification and contraband issues that I have addressed throughout this affidavit."). Thus, the Defendants have presented evidence that alternatives, including allowing anyone wanting to grow long hair/beards to do so, have been tried. The mere fact that those alternatives were tried in a lower custody level, does not make such evidence any less persuasive. Indeed, the fact that the alternatives proved unworkable in the SMU supports the conclusion that they would present similar, if not greater, problems in the MSU because the MSU houses only violent inmates who have demonstrated an unwillingness to conform to the rules and regulations of the SMU and those that pose an extraordinary threat to the security and/or orderly operation of the prison. Even though MSU inmates are more restricted, MSU inmates somehow manage to fashion escape tools and weapons, which can be extremely dangerous to prison staff and others. *See Lane Aff.* ¶ 15-17. Such items can be hidden in long hair and beards and can be used for "the purpose of assaulting staff, facilitating escape, and other activities that threaten the unit's security and safety." *Id.* at 15-16.

The Plaintiff also objects that the Defendants did not consider his "alternative" regarding the use of gloves and masks to address the compelling interests at issue. However, this alternative does not adequately address the safety and security concerns at the MSU. As Ward explains, "[t]he use of gloves does not eliminate the threat from inmates who place such sharp objects in their hair. Moreover, there is concern that the searches of inmates with long hair will be more time consuming and less effective in locating contraband." *Ward Aff.* ¶ 38. Although this "alternative" is less restrictive than the Grooming Policy, it clearly does not serve the compelling interests established.

Not only have the Defendants considered and rejected alternative approaches, they have effectively considered the precise alternative now submitted by the Plaintiff. The Plaintiff argues

10

that the Defendants should institute a religious exemption (or, arguably, some sort of segregation) for MSU inmates who seek accommodation of a religious requirement to keep their hair or beard long. The Plaintiff claims that a sincerity inquiry or some type of "honor system" would guard against manipulation of the exemption; however, common sense dictates that this approach would fail, as it has proven ineffective in the past. *See Ward Aff.* ¶ 39 (describing a situation in January 2004 in SMU where keys were taken and used to release inmates; the keys were not located until the forced haircuts of all inmates were ordered); *see also Lovelace,* 472 F.3d at 217 (Wilkinson, J., dissenting) (Absent due restraint, "inmate requests for religious accommodations [may] become excessive, impose unjustified burdens on other institutionalized persons, or jeopardize the effective functioning of an institution.") (quoting *Cutter,* 544 U.S. at 726). Further, a religious exemption would be nothing more than the *absence* of a policy to address the compelling governmental interests at the MSU. It would not offer an alternative, much less a "lesser restrictive means" to address the compelling interests of safety and security created by long hair and beards in the MSU. In fact, the Fourth Circuit has already determined that such an approach would not serve these compelling interests. *See McRae v. Johnson,* 261 Fed. Appx. 554, 559 (4th Cir. 2008) (finding that an exemption, effectuated through segregation, "would not alleviate the security concern associated with housing all inmates claiming religious exemption in the same facility, as those individuals, without being isolated from each other, would have access to each other along with the *ability to hide contraband in their long hair and/or beards*") (emphasis added).

Moreover, the fact that some prison systems employ exemption approaches similar to that proposed by the Plaintiff is simply not dispositive. Federal courts should extend great deference to the experience and expertise of the prison administrators responsible for the particularized circumstances of their penal institution. *See Cutter,* 544 U.S. at 723. "Although prison policies

11

from other jurisdictions provide some evidence as to the feasibility of implementing a less restrictive means of achieving prison safety and security, it does not outweigh the deference owed to the expert judgment of prison officials who are infinitely more familiar with their own institutions than outside observers." *Fegans v. Norris,* 537 F.3d 897, 905 (8th Cir. 2008).

In *Smith,* the Fourth Circuit gave no indication that it believed the inmate's RLUIPA claim was meritorious and/or could not be resolved by dispositive motion. Instead, the Court was critical of the proof offered by the Defendants, in particular, an affidavit submitted in support of summary judgment. Specifically, the Court was critical that the defendants had made "no attempt whatsoever to explain that hygiene and security concerns in the MSU cannot be accommodated without forcibly shaving the heads of prisoners who wear long hair." *Smith,* 578 F.3d at 253. In contrast, the affidavits submitted by the Defendants in the instant matter clearly explain why the Grooming Policy is the least restrictive means of furthering compelling governmental interests in the MSU, specifically the preservation of safety and security in light of the specific risks posed by hidden weapons and contraband in inmates' long hair/beards. Allowing inmates in the MSU to wear long hair or beards poses serious safety and security risks. The Grooming Policy addresses these compelling interests by eliminating such risks. Surely, most inmates who wear long hair due to religious beliefs will not consent to the Grooming Policy; as such, forced haircuts provide the only answer to the risks posed by long hair/beards in the MSU.

There has not been any suggestion to this Court as to another way the serious safety and security concerns posed by long hair at the MSU could be addressed other than to keep the hair short, even if by force.[14] The wearing of gloves and masks or a religious exemption, as

---

[14] In this case, the Defendants "bear[] the initial burden of pointing to the absence of a genuine issue of material fact." *Temkin v. Frederick County Comm'rs*, 945 F.2d 716, 718

12

recommended by the Plaintiff, certainly does not address these risks. The Defendants have met their burden by "provid[ing] a substantive, relevant explanation," which is deserving of due deference, as to why the Grooming Policy is the least restrictive means of furthering the compelling interests of preserving safety and security in light of the risks posed by inmates' long hair and/or beards. The Defendants have not refuted every conceivable option to mankind, but they have explored alternatives, including the one the Plaintiff now proposes, and have explained why such alternatives do not accommodate the compelling interests at issue. Based on the pleadings, discovery materials, and all affidavits, a reasonable fact-finder could only find that the Grooming Policy is the least restrictive means of addressing the compelling interests associated with inmates' long hair and/or beards at the MSU.

---

(4th Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Once the Defendants meet this burden, "[t]he burden then shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." *Id.* at 718-19 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). Further, "the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show that there is a genuine issue for trial." *Baber v. Hospital Corp. of Am.*, 977 F.2d 872, 874-75 (4th Cir. 1992). In the instant matter, the Defendants have met their burden by "provid[ing] a substantive, relevant explanation," as to why the Grooming Policy is the least restrictive means of furthering the compelling interests at issue. The Defendants have met their burden of persuasion because the Plaintiff has not presented evidence of specific facts by way of affidavits, depositions, interrogatories, or admissions to demonstrate the existence of a genuine and material factual issue for trial. *See Celotex Corp.,* 477 U.S. at 322.

*Immunity*

The Plaintiff brought this suit against the Defendants in their official and individual capacities. *Amended Complaint,* p.2. The Plaintiff "seeks monetary compensation against all (4) defendants for the violation of his Right to Religious Freedom pursuant to 42 U.S.C. 2000cc-1, and the denial of Equal Protection under the (14th) Amendment to the United States Constitution and 42 U.S.C. 2000 (RLUIPA)." *Id.* at 9.

The Plaintiff's claims against the Defendants in their official capacities for money damages are barred pursuant to Eleventh Amendment immunity. When a state official is sued in his or her official capacity, the suit is frequently intended as one against the state, the real party in interest. If a review of the pleadings indicates that the state is, in fact, the party being sued, then judgment awarding damages is precluded by the Eleventh Amendment. *See Will v. Mich. Dep't of State Police,* 491 U.S. 58, 70-71 (1989). There is no dispute that the Defendants in their official capacities are employees of the SCDC and, therefore, are entitled to Eleventh Amendment immunity from monetary damages. Further, the Fourth Circuit has clearly held that such immunity is not waived in RLUIPA. In *Madison v. Virginia,* 474 F.3d 118 (4th Cir. 2006), the Court concluded that RLUIPA does not authorize a claim for monetary damages against officials in their official capacities. Similarly, in *Lovelace,* the Fourth Circuit held that "a state's Eleventh Amendment immunity from suit for damages is not waived in RLUIPA." *Lovelace,* 472 F.3d at 193.

Moreover, the Fourth Circuit recently held in the case of *Rendelman v. Rouse,* 569 F.3d 182, 184 (4th Cir. 2009), that if jurisdiction under RLUIPA is based on the spending clause, RLUIPA does not authorize a claim for money damages against officials sued in their individual

14

capacities.[15] Specifically, the Fourth Circuit held that "in simply defining 'government' in § 2000cc-2 to include a 'person acting under color of State law,' Congress did not signal with sufficient clarity an intent to subject such a person to an individual capacity damages claim under RLUIPA." *Id.* at 189 (citing *Pennhurst State Sch. & Hosp. v. Halderman,* 451 U.S. 1, 17 (1981)).

Similarly, to the extent the Defendants are sued in their individual capacities, they are entitled to qualified immunity from suit, which further protects them from financial liability. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982) (holding that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."). In *Harlow,* the Court found that "[r]eliance on the objective reasonableness of an official's conduct is measured by reference to clearly established law [at the time the action is taken], and should avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment." *Id.*; *Anderson v. Creighton,* 483 U.S. 635, 640 (1987) ("The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. . . . [This] is to say that in the light of pre-existing law the unlawfulness must be apparent.").

A claim of qualified immunity is evaluated using a three-prong analysis. First, the court must determine "whether plaintiff's allegations, if true, establish a constitutional violation." *Hope*

---

[15] In *Rendelman,* the Court recognized that Congress had the right to enact RLUIPA under the spending clause. The Court further noted that RLUIPA itself recognizes that Congress also has the authority to act when actions at issue affect interstate commerce. *See id.* at 187-89. However, the Plaintiff does not allege that the Defendants' actions affected interstate commerce; thus, it must be assumed that RLUIPA applies to the Defendants based on SCDC's receipt of federal funds. As such, money damages are unauthorized in this action.

15

*v. Pelzer,* 536 U.S. 730, 736 (2002); *see Saucier v. Katz,* 533 U.S. 194, 201 (2001). Second, the court must "inquire whether at the time of the alleged violation [the right] was clearly established." *Collinson v. Gott,* 895 F.2d 994, 998 (4th Cir. 1990) (Phillips, J., concurring). Third, the court must determine whether a "reasonable person in the official's position would have known that his conduct would violate that right." *Id.* The Supreme Court recently held that the sequential order of these elements as laid out in *Saucier* is often appropriate, but not mandatory. Instead, the Court held that district courts and courts of appeals should be permitted to exercise their sound discretion in deciding which of the prongs should be addressed first in light of the circumstances of the particular case. *See Pearson v. Callahan,* 129 S. Ct. 808, 818 (2009).

It is well-settled that in determining whether the Plaintiff's rights under RLUIPA were clearly established when the Defendants acted, the unlawfulness of the Defendants' conduct must have been addressed by the United States Supreme Court, Fourth Circuit Court of Appeals, or the South Carolina Supreme Court. *See Wilson v. Layne,* 141 F.3d 111, 114 (4th Cir. 1998). Importantly, the clearly established law, as discussed above and specifically in the Fourth Circuit, at the time this lawsuit was filed does not indicate that requiring the Plaintiff to submit to a haircut or shave violates his rights under RLUIPA. Specifically, the SCDC Grooming Policy was addressed in *Hines,* where the Fourth Circuit found legitimate and compelling penological interests for the enforcement of grooming standards (In doing so, the Court found no violation of the Free Exercise Clause). Moreover, in subsequent cases, this Court and the Fourth Circuit have upheld as constitutional the use of force or some type of compulsion to effectuate compliance with the Grooming Policy in the MSU. *See Caprood v. Moore,* 188 F.3d 501 (4th Cir. 1999) (table); *Strong v. Ozmint,* 106 Fed. Appx. 836 (4th Cir. 2004). Thus, it was not readily apparent to an objectively reasonable corrections administrator in the position of Defendant Ozmint that the

16

continued enforcement of the Grooming Policy was unconstitutional or in violation of RLUIPA based on existing case law at the time the Plaintiff filed this case.

Similarly, the record clearly reflects that Defendants Parker and McGraw, to the extent they are even proper Defendants on the Plaintiff's grooming claim,[16] would have been following and enforcing properly enacted SCDC policy and for that reason would be entitled to qualified immunity. An objectively reasonable correctional officer certainly could have believed that enforcing the Grooming Policy at the direction of the SCDC Director was authorized and did not violate any clearly established constitutional or statutory rights of any inmates. Qualified immunity protects governmental officials from "bad guesses in gray areas" and ensures that they are liable only for transgressing bright lines. *Maciarello v. Sumner,* 973 F.2d 295, 298 (4th Cir. 1992). Certainly, no "bright lines" were crossed by the Defendants in light of existing authority; as such, the Defendants are clearly entitled to qualified immunity with respect to the Plaintiff's claims for monetary damages.

Having thoroughly reviewed the entire record, the Plaintiff's objections, and the applicable law, the Court finds that the Magistrate Judge fairly and accurately summarized the facts and applied the correct principles of law. As such, the Court agrees with the recommendations of the Magistrate Judge and finds that summary judgment is appropriate.

---

[16] The Plaintiff has not pled any specific acts or omissions by Defendants Parker and McGraw, as is required under *Ashcroft v. Iqbal,* 129 S. Ct. 1937 (2009) and Rule 8(a)(2) of the Federal Rules of Civil Procedure.

## **Conclusion**

Based on the foregoing, it is **ORDERED** that the Magistrate Judge's R&R is adopted and incorporated herein by reference, and the Defendants' Motion for Summary Judgment [Docket #55] is **GRANTED**. Further, the Plaintiff's motions for a temporary restraining order [Docket #85] and a preliminary injunction [Docket #123] are **DENIED.**

**IT IS SO ORDERED.**

s/ R. Bryan Harwell
R. Bryan Harwell
United States District Judge

Florence, South Carolina
March 19, 2010